UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE URZUA,<br><br>           Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>           Defendant. | Case No. CV 04-10594-RC<br><br><br><br>OPINION AND ORDER |

Plaintiff Jose Urzua filed a complaint on May 10, 2005, seeking review of the Commissioner's decision denying his application for disability benefits. The Commissioner answered the complaint on October 18, 2005, and the parties filed a joint stipulation on December 16, 2005.

**BACKGROUND**

**I**

On September 24, 1997, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), claiming an inability to work since October 29, 1996, due to lower back and right

knee injuries. Certified Administrative Record ("A.R.") 62, 71-73, 114. The plaintiff's application was initially denied on January 7, 1998, and was denied again on February 25, 1998, following reconsideration. A.R. 50-60. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Walter J. Fisher ("the ALJ") on November 3, 1998. A.R. 23-42, 47-49. On May 12, 1999, the ALJ issued a decision finding plaintiff is not disabled. A.R. 8-16. The plaintiff appealed the decision to the Appeals Council, which denied review on July 14, 2000. A.R. 3-7.

The plaintiff then sought judicial review in this district court, and on July 11, 2001, Judge Ann I. Jones issued a decision remanding the matter to the Social Security Administration under sentence four, 42 U.S.C. § 405(g). A.R. 301-310.

On December 9, 2002, following remand, the ALJ held another administrative hearing, and on June 4, 2003, the ALJ issued a second decision, again finding plaintiff is not disabled. A.R. 258-67, 281-300. The plaintiff appealed the decision to the Appeals Council, which denied review on January 27, 2004. A.R. 248-55.

**II**

The plaintiff, who was born in Mexico on February 16, 1959, is currently 47 years old. A.R. 27, 63, 71. He has an eighth grade education, and previously worked as a truck driver, a laborer, and in a slaughter house. A.R. 27-29, 98-103, 285-88. The plaintiff did not work from October 29, 1996, until June 12, 1999, when he returned to work as a truck driver, and he is now self-employed, having purchased

his own truck in April 2001.  A.R. 153-54, 262, 284, 291.

The plaintiff has a history of repetitive right knee injuries, dating back to 1980 and occurring most recently on June 1, 1995, when he was involved in a work-related motor vehicle accident, and plaintiff has undergone several right knee surgeries.  A.R. 144, 170-71.  In 1992, plaintiff also began to experience lower back pain.  Ibid.

On August 8, 1996, Steven N. Brourman, M.D., an orthopedic surgeon, examined plaintiff, diagnosed him with post-traumatic arthritis of the right knee and determined plaintiff has "a diminished capacity for heavy lifting, repetitive bending, stooping, squatting, crouching and climbing[,]" and "[h]e should not work at unprotected heights."  A.R. 169-77.  Between October 29, 1996, and March 6, 1997, plaintiff received treatment at a clinic, where he was diagnosed with traumatic right knee arthritis and obesity, among other conditions, and was prescribed Tylenol no. 3 and Motrin 800.  A.R. 151-68.  On January 5, 1997, Ricardo E. Chambi, M.D., opined that plaintiff would be able to return to work by February 15, 1997.  A.R. 153-54.

Between March 13 and November 5, 1997, plaintiff received treatment from Gustav Salkinder, M.D., who diagnosed him with severe lower back pain, lumbar radiculitis,[1] a lumbar spine strain/sprain and

---

[1] Radiculitis is "inflammation of the root of a spinal nerve, especially of that portion of the root which lies between the spinal cord and the intervertebral canal."  Dorland's Illustrated Medical Dictionary, 1511 (29th ed. 2000).

3

right knee pain with internal derangement, and determined plaintiff was temporarily totally disabled during this time period.  A.R. 181-212.

On November 20, 1997, Paul McDonough, M.D., an orthopedic surgeon, examined plaintiff and diagnosed him as having low back pain with left lower leg radiculopathy,[2] which was exacerbated by standing for long periods or lifting.  A.R. 144-49.  Lumbar spine x-rays showed a loss of normal lumbar lordosis and no disc space between L5-S1, most consistent with a sacralized L5, while right knee x-rays showed some mild joint space narrowing and patellar osteophyte[3] formation.  A.R. 148.  Dr. McDonough opined plaintiff can occasionally lift 20 pounds and frequently lift 10 pounds, and he can stand and walk four hours a day and sit for six hours a day.  A.R. 149.

On January 5, 1998, a nontreating, nonexamining physician opined plaintiff can occasionally lift and/or carry up to 20 pounds, climb, kneel, crouch and crawl, frequently lift and/or carry up to 10 pounds, balance and stoop, and can stand approximately 4 hours in an 8-hour day.  A.R. 133-40.

Between January 8 and September 22, 1998, plaintiff received treatment from Manuel Zavalos, M.D., who diagnosed him as having lower back pain and morbid obesity, among other conditions.  A.R. 215-37.

---

[2] Radiculopathy is a "disease of the nerve roots." Dorland's Illustrated Medical Dictionary at 1511.

[3] An osteophyte is "a bony excrescence or osseous outgrowth." Dorland's Illustrated Medical Dictionary at 1290.

On May 28, 1998, plaintiff underwent thoracic and lumbar spine x-rays, which showed degenerative spondylosis[4] of the mid- and lower-thoracic spine, lumbar spine spondylosis, and mild L5-S1 interspace narrowing, suggesting disc degeneration. A.R. 229-30. On August 18, 1998, electromyography was performed on both of plaintiff's lower legs and the lumbosacral paraspinal muscles, and the results were normal, while nerve conduction velocity studies of both lower legs, taken the same day, revealed a mild decreased amplitude of the left leg H wave. A.R. 227-28.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff's application for disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

"In determining whether the [ALJ's] findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Reddick, 157 F.3d at 720; Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir.

---

[4] Spondylosis is "a general term for degenerative changes due to osteoarthritis." Dorland's Illustrated Medical Dictionary at 1684.

2001).  "If the evidence can reasonably support either affirming or reversing the [ALJ's] conclusion, the court may not substitute its judgment for that of the [ALJ]."  Reddick, 157 F.3d at 720-21; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "The claimant bears the burden of establishing a prima facie case of disability."  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case.  20 C.F.R. § 404.1520.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities.  20 C.F.R. § 404.1520(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite his limitations to

perform his past work.  20 C.F.R. § 404.1520(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found there is no evidence plaintiff engaged in substantial gainful activity between October 29, 1996, the alleged onset date, and June 11, 1999, although plaintiff has been engaged in substantial gainful activity since June 12, 1999.  (Step One).  The ALJ then found that from October 29, 1996, through June 11, 1999, plaintiff had "obesity, arthritis of the right knee and lumbar spine strain[,]" which were severe impairments (Step Two); however, he did not have an impairment or combination of impairments that met or equaled a Listing.  (Step Three).  The ALJ next determined plaintiff was unable to perform his past relevant work from October 29, 1996, through June 11, 1999.  (Step Four).  Finally, the ALJ concluded that, between October 29, 1996, and June 11, 1999, plaintiff was able to perform a substantial number of jobs in the national economy; therefore, he was not disabled.  (Step Five).

**IV**

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here, the ALJ found plaintiff has the RFC to perform "less than the full range of light work."  A.R. 266.  More specifically, the ALJ found:

1 [plaintiff's] capacity to perform basic work-related
2 activity is limited only by his inability to perform heavy
3 lifting[,] with lifting, carrying, pushing and pulling
4 restricted to no more than twenty pounds occasionally and
5 ten pounds frequently, an inability to perform repetitive
6 bending, stooping, squatting, crouching, and climbing, and
7 an inability to work at unprotected heights.

Id. However, plaintiff contends the ALJ's RFC finding is not supported by substantial evidence because the ALJ improperly concluded plaintiff was not a credible witness.

The plaintiff testified at the administrative hearing following remand that, during the relevant time period, he experienced constant back pain, which sometimes went all the way down his legs to his feet, and about two or three times a month his back pain was so bad he could not even get out of bed. A.R. 285-86, 293. At the initial administrative hearing, plaintiff testified he experienced right knee pain and swelling, left knee weakness and swelling, and his left ankle would "bend out" unless supported. A.R. 34-36, 39.[5] Further, plaintiff testified at the initial administrative hearing: he could only walk for about 10 minutes; he could only sit for approximately 15 to 20 minutes before he has to stand for about 5 minutes, and he could

---

[5] At his first administrative hearing, plaintiff also testified he experienced chest pain and shortness of breath; however, at the second administrative hearing, plaintiff stated he no longer experiences any chest pain because he is more relaxed and has less pressure since he purchased his own truck. A.R. 34-35, 292-93.

8

continue this routine for 5-6 hours before he had to lay down; he had difficulty bending and stooping; he could not squat or crawl; and his left ankle problems prevented him using a clutch. A.R. 35-37, 40-41. Most recently, plaintiff testified that because of his back and right knee problems, he continues to need to lie down to relax his back and knees for at least half an hour every two hours. A.R. 285-86, 290, 299.

Once a claimant has presented objective evidence that he suffers from an impairment that could cause pain or other nonexertional limitations, the ALJ cannot discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). Thus, if the ALJ finds the claimant's subjective complaints are not credible, he must make specific findings to support that conclusion. Moisa, 367 F.3d at 885; Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); Morgan v. Commissioner of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found plaintiff's testimony was not credible "to the extent [plaintiff claims] he is unable to perform light work" since plaintiff was not "referred for any pain specialist treatment"

and instead received "only conservative treatment . . . for his pain symptoms. . . ." A.R. 264. This is a proper basis for rejecting plaintiff's excess pain testimony. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (Claimant's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received."); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found claimant's excess pain testimony was not credible because, among other reasons, claimant's treating physician prescribed only conservative treatment, "suggesting a lower level of both pain and functional limitation").

Furthermore, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disability effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); see also Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Here, the ALJ noted that no treating or examining physician supported the severe limitations plaintiff purportedly experienced during the relevant time period. A.R. 264-65. This, too, is a proper basis for rejecting plaintiff's excess pain testimony. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1995)(substantial evidence supported finding claimant could do a narrow range of medium work where no examining physician concluded claimant was totally disabled). Thus, "[t]he ALJ's reasons for his credibility determination were clear and

1  convincing, sufficiently specific, and supported by substantial
2  evidence."  <u>Celaya v. Halter</u>, 332 F.3d 1177, 1181 (9th Cir. 2003);
3  <u>Burch</u>, 400 F.3d at 681.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:   August 15, 2006            /s/ Rosalyn M. Chapman
                                  ROSALYN M. CHAPMAN
                                  UNITED STATES MAGISTRATE JUDGE

R&R-MDO\04-10594.MDO
8/15/06

11